IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| THEREASA L. SMITH * <br> ADC #717744 * <br> * <br> Plaintiff, * <br> v. *    No. 3:20-cv-00390-JJV <br> * <br> NURZUHAL FAUST; *et al.* * <br> * <br> Defendants. * | |

**MEMORANDUM AND ORDER**

**I.  INTRODUCTION**

Thereasa L. Smith ("Plaintiff") sued multiple Defendants making multiple claims.  (Doc. Nos. 20, 23.)  Plaintiff's claims against Defendants Faust, the McPherson Unit of the Arkansas Division of Correction, and various nursing staff and McPherson Unit employees have been dismissed, as have Plaintiff's official-capacity damages claims, Americans With Disabilities Act claims, and equal protection claims.  (Doc. Nos. 27, 30, 35.)  The only claims remaining in this case are Plaintiff's deliberate indifference and conditions of confinement claims against Defendants Judy Baiza,[1] Isaac Tate,[2] and Claire Garoutte.[3]  (*Id*.)

---

[1] The Clerk of the Court is directed to change Defendant Baiza's name on the docket to Judy Baiza. (Doc. No. 47.)

[2] The Clerk of the Court is directed to change Defendant Tate's name on the docket to Isaac Tate. (Doc. No. 45.)

[3] The Clerk of the Court is directed to change Defendant Garoutte's name on the docket to Claire Garoutte. (Doc. No. 47.)

Defendant Tate now has filed a Motion for Summary Judgment arguing that Plaintiff failed to exhaust her administrative remedies. (Doc. Nos. 55-57.) Plaintiff has responded (Doc. Nos. 58, 59); this matter is ripe for a decision. After careful consideration of the record before me, Defendant Tate's Motion (Doc. No. 55) is GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material

will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   ANALYSIS

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust available prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (per curiam). Exhaustion under the PLRA is mandatory. *Bock*, 549 U.S. at 211. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

The grievance policy of the Arkansas Department of Correction in effect at the time of the alleged constitutional violations was Administrative Directive 19-34 ("AD 19-34"), and Plaintiff's allegations are governed by that Directive. (Doc. No. 57 at ¶ 6; Doc. No. 55-1, at ¶ 4; Doc. No. 55-2.) Pursuant to the Directive, an inmate is required to attempt informal resolution of a problem or complaint prior to filing a formal grievance. (Doc. No. 55-2 at 1-2.) This is accomplished by completing and submitting the Unit Level Grievance Form within fifteen days after the occurrence of the incident. (*Id*. at 6.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*.) Following an attempt

at informal resolution, an inmate may proceed by filing a formal grievance on the same Unit Level Grievance Form.  (*Id*. at 9.)   The warden or his designee must provide a written response within twenty working days of receipt.  (*Id*. at 11.)   If dissatisfied with the response, the inmate may appeal within five working days to the appropriate Chief Deputy/Deputy/Assistant Director.  (*Id*. at 12.)   The Chief Deputy/Deputy/Assistant Director must provide a written response within thirty working days.  (Doc. No. 55-2 at 13.)   "A [written] decision or rejection of an appeal at this level is the end of the grievance process."  (*Id*.)   Administrative Directive 19-34 includes the following warning:

> A Grievance must specifically name each individual involved in order that a proper investigation and response may be completed.  An inmate must fully exhaust the grievance procedure as a prerequisite to pursuing any legal action related to the subject matter of the grievance.  All inmates are hereby advised that the Division reserves the right to raise any and all defenses, including the failure to exhaust the grievance procedure, as to any claim which may have been subject to the grievance procedure and as to any person or entity.
>
> An inmate who fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed   by the court or commission for failure to exhaust against all parties.

(*Id*. at 5.)

Defendant Tate contends Plaintiff did not exhaust her claims against him.  (Doc. No. 57 at ¶ 38.)   In support of his Motion, Defendant Tate submitted the Declaration of Terri Grigsby-Brown, the ADC's Inmate Grievance Supervisor for non-medical grievances.  (Doc. No. 55-1.) Ms. Grigsby-Brown reviewed Plaintiff's grievance appeal file for any exhausted grievances relating to Plaintiff's claims in this case; Ms. Grigsby-Brown also reviewed Plaintiff's grievance appeal file for non-medical grievances filed between June 18, 2020 and December 1, 2020 that named or referenced Defendant Tate.  (*Id*. at ¶ 33.)   Ms. Grigsby-Brown "found that, prior to

4

filing this lawsuit [on December 1, 2020], [Plaintiff] did not file or fully exhaust any grievances against Isaac Tate pertaining to [Plaintiff's] claims against her in this lawsuit." (*Id*. at ¶ 34.)

In her Response to Defendant Tate's Motion, Plaintiff asserts that she did exhaust her administrative remedies against Defendant Tate. (Doc. No. 58.) She points specifically to a grievance dated December 27, 2020 -- Grievance MCP21-00075. (*Id*. at 4-5.) Plaintiff explains she sent the yellow copy to grievance appeals as the "white copy never got returned from the Officer Isaac Tate because . . . he was hiding and or could not be found in time enough." (*Id*. at 4) Plaintiff maintains the ADC intentionally "delayed [her] grievances as they have done so many times." (*Id*.)

Plaintiff provided copies of Grievances filed. (Doc. No. 59.) Grievance MCP21-00075 reads:

> At approximately 3:15 when barracks 2 was going to chow, Officer Tate was not wearing his mask while close (within 6 ft of other inmates). He said he was drinking. He did not replace his mask until all inmates were seated.

(*Id*. at 59) Plaintiff submitted Step One on December 27, 2021; Step One was returned to Plaintiff on January 15, 2021 – some 19 days later—and she submitted her Step Two on that same date. (*Id*.) The Grievance was rejected on January 19, 2021 as untimely. (*Id*. at 56.)

Plaintiff appealed Grievance MCP21-00075. (*Id*.) Plaintiff's Appeal reads, in part: "It is not my fault that the ADC security officers don't reply to the grievances on purpose." (*Id*. at 56.) Plaintiff's appeal was denied; the Director's Decision concurred with the denial of Grievance MCP21-00075 as untimely. (Doc. No. 59 at 57.)

Plaintiff submitted a Step Two in a grievance identical to Grievance MCP21-00075 on January 11, 2021; that grievance that was rejected and returned to her as "not processed, previously

5

answered/rejected, or a duplicate." (*Id*. at 60.) Plaintiff asserts that was the ADC's mistake. (Doc. No. 58 at 11.)

I understand Plaintiff's frustration with untimely responses. But the ADC's late response to Plaintiff's Step One does not save her claims against Defendant Tate in this case. Under the applicable grievance policy, AD 19-34, at Step One, a problem solver will meet with an inmate within three working days after receipt of the unit level grievance form. (Doc. No. 55-2 at 8.) AD 19-34 further explains that

> [i]f the designated Problem Solver. . . has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One (the grievance) within the designated three working days, the inmate may proceed to Step Two, the formal grievance, without the completion of Step One. In that instance, Step Two, the formal grievance, must be filed no later than six (6) working days from the original submission of the Unit Level Grievance Form pursuant to Step One: this allows three (3) working days to wait for a response to Step One, and three (3) working days to initiate Step Two.

(*Id*.)

Further, in connection with a different grievance, Plaintiff had been made aware she could proceed to Step Two if she had not received a response to her Step One within the allotted time. (Doc. No. 59 at 21.) Plaintiff submitted an inmate request form in which she wrote: "I did not receive my grievance back dated 12/6/2020. I need to proceed to my 2nd step." (*Id*.) The responding staff member explained to Plaintiff on December 21, 2020 that if Plaintiff did not "receive [her] Step One response within 3 working days[,] [she] can go to Step Two with the yellow or pink (whichever is more legible/if legible." (*Id*.) Plaintiff received this explanation nearly a week before she filed Grievance MCP21-00075. Yet she waited 19 days—well beyond

the six working days specified in AD 19-34—before proceeding to Step Two with Grievance MCP21-00075.[4]  Grievance MCP21-00075 was untimely.

Considering all of the above, I find Plaintiff failed to exhaust her administrative remedies against Defendant Tate.  Defendant Tate's Motion (Doc. No. 55) is granted.

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court.  To the contrary, the exhaustion requirement plays a critical role in the remedy process.  The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson v. Jones*, 340 F.3d 624, 626-27 (8th Cir. 2003); *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

I also note that Plaintiff referred to her Response as a Cross Motion for Summary Judgment. (Doc. No. 58.)  But exhaustion is an affirmative defense.  If a defendant does not establish that a plaintiff failed to exhaust, the issue is put to rest—it is not necessary for a plaintiff to seek summary judgment in her favor on the issue of exhaustion.

---

[4] Plaintiff also argues she sent Grievance MCP21-00075 on January 16, 2021, not January 19, 2021. (Doc. No. 58 at 7.)  Even if that is so, Grievance MSP21-00075 is still untimely.  Further, any January 11, 2021 Step Two (*see* Doc. No. 58 at 11; Doc. No. 59 at 60) was also untimely, as it was filed more than six working days after December 27, 2020.

### IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Defendant Tate's Motion for Summary Judgment for failure to exhaust administrative remedies (Doc. No. 55) is GRANTED.

2. Plaintiff's claims against Defendant Tate are dismissed without prejudice for failure to exhaust administrative remedies.

3. Defendant Tate is DISMISSED from this action.

4. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order adopting would not be taken in good faith.

DATED this 5th day of August 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRSTE JUDGE